Brackenridge, J.
in substance said, that the plaintiff’s location was descriptive of the lands in dispute, by calling for William and James Caruthers. The limitation act was grounded on the inconveniences resulting from pocketed locations ; but where the warrant or application has been put into the hands of the surveyor to be executed, it rebutted all presumption of abandonment ; á multo fortioid, where a survey had been begun, though imperfect in all particulars. As to the defendant, it was perfect, because.it drew a dividing line between his improvements and the lands in controversy. So a location calling for natural boundaries, is out of the limitation act. It is true, the lines as run do not include any space, but it is common to leave an open line, and the running of a few courses more, would complete *175 the survey m the present instance. Here the defendant’s uncle prevented the completion of the survey in 1770. The plaintiff made two efforts for this purpose, but was unsuccessful in each. *He was in no default, but paid the full surveying fees, *He had made prior improvements, and must have intended [*176 to include them ; and his taking possession is strong evidence of his intentions. Besides, the shape and figure of the defendant’s survey is very unreasonable, when the prior legal right of the plaintiff came to be considered. And on the whole, he concluded, that the plaintiff was entitled to a verdict.
Yeates, J.
admitted, that the small disputed gore, might be described by the plaintiff’s location ; but the same remark was equally applicable to other lands, adjoining those called for, lying in other directions. It could not be deemed a close, precise application, comparable to one calling for natural boundaries.
The law in question is declared to have been made, “for the “quieting of estates and the greater security of real property.” Secret orders of survey kept back for years, without any efforts to execute them, were undoubtedly intended to be guarded against; but an application whereon a survey has been begun one year, taken up again in three years, and not perfected for the term of twenty-eight years afterwards, has many serious mischiefs attendant on it. It tends to litigation, and prevents the settlement of the country; for no one can tell what new courses are meditated. Nine courses run, and nine in fieri, cannot with any propriety be called a survey made, within the expressions or meaning of the legislature. Merely putting a warrant into the hands of the acting surveyor, does not obviate the inconvenience intended to be obviated. More is to be done by the applier. It is true, if the surveyor either through fraud, partiality or negligence, does not proceed in his work, every thing reasonable being done on the part of the applier, — or if he is prevented by force or menace or the caveat of the adverse party, it will form an exception to the generality of the words. In this instance, though the father and uncle of the lessor of the plaintiff were dissatisfied with his projected survey, they did not obstruct its completion. The former left him, as the party were going on ; and notwithstanding the reproaches of the latter, he was peremptory in concluding the business, and was only stopped from his purpose by the want of Harkness’s survey. This he engaged to procure and to call on the surveyor with it, but failed therein, Is not then gross laches justly attributable to him ?
It is certain, that the public surveyors do not run the closing line; and no evil arises herefrom, because the notice is general, and the lands comprehended by the survey are accurately ascertained. But the plaintiff had no effective survey made on either day. No definite space was comprehended. He *meant to go further a-field. A line subtended from the white [*177 oak stump, or black oak, to the hickory, leaves out the present *177 object of contention. How could it be known to what extent, or in what direction his inclination might lead him ?
Messrs. Hamilton and Duncan, pro quer.
Messrs. C. Smith and Waltz, pro def.
As to his reducing his application to a certainty by taking possession he had only cleared over his father’s lines ; but if it is to be deemed an improvement, he disclaims all equity under it, by not inserting it in his location, if he intended to include his clearing. The uncle’s warrant was more correct, though not sufficiently so. One of the witnesses speaks of his settlement as made in 1756, another in 1761 or 1762, and the interest on his warrant only commences in 1770. Considering the mere improvement rights, the defendant’s title appears most preferable. The uncle was actually settled on the land with his family, had actually 48 acres of land in cultivation thirty-one years ago ; his dwelling house only a short distance south of the boundary of the lands in dispute; and had a considerable intermediate field then cleared.
He further added, that in either view of the case, he thought that the plaintiff ought not to recover the premises in question.
The jury appeared at the bar next day, ready to give their verdict, but the plaintiff suffered a nonsuit.